IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00044 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Casey Tadios, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 47)**

Defendant is currently incarcerated at the Federal Correctional Institution Sheridan in Oregon with a projected release date of May 7, 2022.

Defendant has filed a Motion seeking immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release due to the COVID-19 pandemic.

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

Defendant's EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 47) is **DENIED.**

**STANDARD OF REVIEW**

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.  Dillon v.

1

United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018. PL 115-391, December 21, 2018, 132 Stat. 5194. The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i)  extraordinary and compelling reasons warrant such a reduction;
> ...
>        and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A.   Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented his request to the Bureau of Prisons ("BOP").  18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant Tadios states he submitted his request for compassionate release to the BOP on August 10, 2020 and again on August 16, 2020.  (Ex. C to Def.'s Motion, ECF No. 47-4).  The Government argues that the BOP never received Defendant Tadios's requests.  The Court assumes, without making a determination, for purposes of the Motion here that Defendant Tadios has complied with the procedural requirement of 18 U.S.C. § 3582(c)(1)(A) and the Court considers the merits of the Defendant's motion for compassionate release.

### B.   Merits Of Defendant's Request For Compassionate Release

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A)  Extraordinary and compelling reasons warrant the reduction; or
>
>    (B)  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

If Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c), Defendant is only entitled to relief if he demonstrates:

> (1) extraordinary and compelling reasons warrant a sentence reduction;
>
> (2) he is not a danger to the safety of others or the community; and,
>
> (3) any requested reduction is consistent with the policy statement.

United States v. Gill, 2020 WL 2084810, *2 (E.D. Cal. Apr.

4

30, 2020).

### C. Extraordinary And Compelling Reasons

The Sentencing Commission's Commentary Application Notes for Guideline § 1B1.13 provides the definition of "extraordinary and compelling reasons."  The Court agrees with the majority of the district courts in the Ninth Circuit that have concluded that Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See Riley v. United States, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); United States v. Shields, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's Commentary Application Notes explain that extraordinary and compelling reasons exist when:

    (A)  **Medical Condition of the Defendant.**–

        (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I)        suffering from a serious physical or medical condition,

>   >   (II)     suffering from a serious functional or cognitive impairment, or
>   >
>   >   (III)    experiencing deteriorating physical or mental health because of the aging process,
>   >
>   > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant**.–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances**.–
>   (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court has the discretion to determine whether other extraordinary and compelling reasons exist, as stated in paragraph (D), when ruling on motions for compassionate release. United States v. Brooker, ___ F.3d ___, 2020 WL 5739712, *7 (2d Cir. Sept. 25, 2020); United States v. Hernandez, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).

6

**PROCEDURAL HISTORY**

On March 28, 2018, the grand jury returned a four-count Indictment.  The Indictment charged Defendant Tadios with three counts of distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (ECF No. 12). The Indictment also charged Defendant Tadios with one count of distributing five grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  (Id.)

On July 23, 2019, Defendant Tadios pled guilty to Count 1 of the Indictment for distributing 50 grams or more of methamphetamine on or about August 2, 2017.  (ECF Nos. 34, 35, 36, 37, & 39).  Defendant Tadios was held responsible for a total of 618.7 grams of "ice."  (Presentence Report ¶¶ 27, 28, ECF No. 41).

On October 31, 2019, the Court held a sentencing hearing. (ECF No. 44).

At the Defendant's sentencing, Defendant Tadios was in Criminal History Category I with a Total Offense Level of 29. (Presentence Report at ¶ 82, ECF No. 41).  Defendant Tadios was eligible for the "safety valve" provision pursuant to 18 U.S.C. § 3553(f).  (Id. at p. 27).  His guideline range was 87 to 107 months.  (Id. at pp. 24, 26-27).

The Court departed downward and sentenced the Defendant to 48 months imprisonment and five years of supervised release.

(ECF Nos. 44, 45).

On October 15, 2020, Defendant filed EMERGENCY MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE). (ECF No. 47).

On November 5, 2020, the Government filed its Opposition. (ECF No. 52).

On November 20, 2020, Defendant filed his Reply.  (ECF No. 53).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## ANALYSIS

Defendant Tadios is 48 years old.  The Defendant is currently incarcerated at the Federal Correctional Institution Sheridan in Oregon.  The Defendant bears the burden to demonstrate that extraordinary and compelling reasons exist that warrant immediate release from incarceration.  United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020).

A defendant's general concerns about potential exposure to COVID-19 while incarcerated do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. United States v. Eberhart, 448 F.Supp.3d 1086, 1089-90 (N.D. Cal. Mar. 25, 2020); United States v. Carver, __ F.Supp.3d ___, 2020 WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control ("CDC") has identified

8

certain categories of individuals that are at a higher risk for severe illness due to COVID-19. The list includes people with conditions such as: chronic lung disease, moderate or serious asthma, serious heart conditions, obesity, chronic kidney disease requiring dialysis, liver disease, diabetes, or individuals who are immunocompromised. See United States v. Jones, Crim. No. 13-00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

I.  **Medical Condition**

    A.  **Current Centers For Disease Control Standards And Defendant's Medical Concerns**

Defendant Tadios states he suffers from hypertension, Type 2 diabetes, and obesity. The Defendant also states he has high cholesterol.

The CDC identified obesity as a medical condition that places an individual, regardless of age, at increased risk. The CDC defines individuals as obese if he or she has a body mass index ("BMI") of 30 or above. (CDC Coronavirus Disease 2019 (COVID-19) Website, at "People with Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/index.html, last visited 12/18/2020).

The CDC has identified Type 2 diabetes as a medical condition that places an individual at increased risk. (Id.)

The CDC has also identified hypertension as a medical condition that might place an individual at an increased risk

should they contract COVID-19. (Id.)

### B.   Medical Conclusion

Defendant is 48 years old.  The CDC recognizes that the risk of developing severe illness from COVID-19 increases with age.  Those 65 years of age or older are at increased risk and those 85 years and older at the greatest risk.  (https://www.cdc.gov/coronavirus2019-ncov/need-extra-precautions/older-adults.html, last visited 12/18/20).  Defendant Tadios's age does not place him in a category that would constitute an extraordinary and compelling reason for compassionate release.

Defendant Tadios's Bureau of Prisons ("BOP") medical records reflect that as of March 12, 2020, Defendant Tadios's recorded weight was 221 pounds and his recorded height was 72 inches or 6 feet.  (Ex. B to Def.'s Motion at pp. 8, 81, ECF No. 50).  Pursuant to the U.S. Department of Health and Human Services' BMI Calculator, Defendant Tadios's BMI was 30 as of March 12, 2020.  The Defendant is considered to be at the beginning of the obesity scale under the CDC definition.  The Court finds that Defendant Tadios's marginal obesity alone is insufficient to support a finding of "extraordinary and compelling reasons" for immediate release.

A review of the Defendant's BOP medical records demonstrates he is receiving treatment for his hypertension, Type 2 diabetes, and his high cholesterol.

10

The BOP medical records show Defendant Tadios's Type 2 diabetes is continually monitored by the Pharmacy Diabetes Management Clinic.  Treatment for his Type 2 diabetes includes continued monitoring and counseling on a healthy diet, healthy lifestyle, and exercise.  (Id. at pp. 8-9).  Defendant Tadios is also prescribed insulin and metformin, and he is prescribed glucose test strips to monitor his glucose level.  (Id. at pp. 9, 12-13).

Defendant Tadios is prescribed Losartan for his hypertension.  (Id. at p. 12-13).  As of March 12, 2020, Defendant Tadios's blood pressure was "well controlled" and "within goal."  (Id. at p. 8).

Defendant Tadios is prescribed hydrochlorothiazide for his high cholesterol (also known as hyperlipidemia).  (Id. at p. 82).  The CDC does not recognize high cholesterol as a medical condition that might place an individual at an increased risk should they contract COVID-19.  The Defendant's high cholesterol does not put him at a higher risk for severe COVID-19 symptoms.

The Defendant's medical records demonstrate that he has received and continues to receive appropriate medical care by the BOP.  Conditions that can be managed in prison are not a basis for compassionate release.  United States v. Kazanowski, Crim. No. 15-00459 DKW-05, 2020 WL 3578310, *9 (D. Haw. July 1, 2020) (citing U.S.S.G. § 1B1.13 cmt. N.1(A)).

## II. Section 3553(a) Factors And Defendant's History and Characteristics

### A. History and Characteristics

In order to be eligible for compassionate release, Defendant Tadios must establish that release is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) and that he is not a danger to the safety of others or the community. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

The Section 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.

Defendant Tadios is currently serving a term of imprisonment for trafficking in large quantities of "ice." He sold highly pure methamphetamine to undercover investigators and cooperating sources on multiple occasions. (Presentence Report at p. 26, ECF No. 41). Defendant Tadios was held responsible for 618.17 grams of "ice." (Id.)

While the statutory minimum for the Defendant's crime was ten years, at sentencing, Defendant Tadios was safety valve eligible so his sentencing range was 87 to 108 months imprisonment. Defendant Tadios was sentenced below the sentencing guideline range. He received a sentence of 48-month imprisonment.

Defendant Tadios's criminal history started at the age of 20. The Defendant was arrested and charged with Theft 2 for

12

stealing $1,497.00 worth of tokens from his employer.  (Id. ¶ 43).  Defendant was granted a 5-year Deferred Acceptance (DANC) plea.  (Id.)  He had the opportunity to expunge his record if he met certain requirements.  (Id.)  Defendant failed to meet the conditions for his DANC plea.  (Id.)  On March 22, 1999, his DANC plea was set aside and Defendant was resentenced to six months confinement and five years probation.  (Id.)

Immediately upon his release and while on probation, Defendant Tadios violated his probation conditions five separate times between September and December of 1999.  (Id.)  His violations included failing drug tests, failing to make monthly reports, and underreporting his substance abuse history.  (Id.)  Defendant Tadios absconded from his probation supervision and a bench warrant was issued on December 22, 1999.  (Id.)  On July 21, 2009, Defendant Tadios was arrested pursuant to the warrant.  (Id.)

At the age of 25, Defendant Tadios was arrested on a separate charge of Theft 2 and with Criminal Contempt of Court.  (Id. ¶ 47).

At the age of 37, the Defendant was arrested for abusing his then-girlfriend by punching her in the back of her head and then dragging her back into the home when she tried to run.  (Id. ¶ 48).

Defendant Tadios has a history with the criminal justice system since he was 20 years old.  He has a record of failing to

13

meet court-mandated conditions and requirements numerous times. Defendant Tadios has a history of absconding from his probation supervision. He also has a history of violence.

### B.   Portion Of Sentence Served

A review of the caselaw demonstrates that the portion of the sentence already served by the defendant is a necessary factor for the Court to consider in evaluating compassionate release. United States v. Connell, ___ F.Supp.3d. ___, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). The amount of time served of the originally imposed sentence must be considered pursuant to Section 3553(a) to ensure that the amount of time adequately reflects the seriousness of the offense, deters criminal conduct, and protects the public. United States v. Barber, 466 F.3d 1127, 2020 WL 2404679, *5 n.9 (D. Ore. May 12, 2020).

Defendant Tadios received a 48-month sentence. His projected release date is May 7, 2022. At the time Defendant Tadios filed his motion for compassionate release with the Court, the Defendant had served ten months of his 48-month sentence, or approximately 21% of his sentence.

///
///
///
///
///

    **C.    Appropriateness of Immediate Release**

The nature and circumstances of Defendant Tadios's offense weigh against immediate release. Defendant Tadios was responsible for 618.17 grams or 1.36 pounds of "ice," a highly addictive illegal substance. The Defendant sold large quantities "ice" to undercover officers or cooperating sources four times over the course of six months. Defendant Tadios has a history of failing to comply with court-ordered conditions and requirements for probation. The Defendant's immediate release is not appropriate given the totality of circumstances under Section 3553(a) Factors.

**III. Summary Of Medical Conclusion And Section 3553(a) Factors**

Defendant Tadios has not established a basis for compassionate release based on his medical issues. The record does not demonstrate that he is suffering from a terminal health condition or a condition that substantially interferes with his ability to provide self-care while incarcerated. The Defendant has received and continues to receive appropriate medical care while incarcerated.

Defendant Tadios was convicted of a serious crime and has served only 21% of his sentence with a projected release date of May 7, 2022. He has not established that his immediate release is warranted pursuant to the Section 3553(a) factors.

**CONCLUSION**

Defendant's Emergency Motion To Reduce Sentence Under The First Step Act (ECF No. 47) is **DENIED**.

IT IS SO ORDERED.

Dated: December 18, 2020, Honolulu, Hawaii.

Helen Gillmor
Senior United States District Judge